### FALVEY v. FOREMAN-STATE NAT. BANK et al.

#### No. 6498.

Circuit Court of Appeals, Seventh Circuit.

Jan. 11, 1939.

Joseph E. Green, Daniel A. Costigan, and William C. Wines, all of Chicago, Ill., for appellant.

Weymouth Kirkland, Howard Ellis, Joseph B. Duggan, Paul V. Harper, James F. Oates, Jr., Howard Neitzert, Herman Waldman, and Sidney S. Gorham, all of Chicago, Ill., for certain appellees.

Before SPARKS and TREANOR, Circuit Judges, and LINDLEY, District Judge.

SPARKS, Circuit Judge.

The questions here presented arise out of the court's dismissal of appellant's amended bills in equity. Both the original and amended bills were brought by appellant on behalf of himself and all other persons similarly situated with respect to the subject matter.

Appellant was a shareholder of the Foreman-State National Bank, and by his original bill, which was based upon the doctrine of exoneration, sought to enforce a claim of $880,000 with interest, against the appellee directors, and to apply the proceeds thereof in diminution of that bank's debts. Upon dismissal of the original bill by the court, appellant by leave, filed an amended bill, which on appellees' motion was also dismissed by the court at appellant's costs on October 11, 1937. From this order of dismissal the appeal is prosecuted.

The amended bill purported to be a derivative cause of action and alleged the same facts as those in the original bill. It sought a recovery of the $880,000 by reason of an alleged wrongful appropriation, in December, 1929, by the appellee directors, to four of their number, as a bonus and gratuity. The appropriation was alleged to have been accomplished by the cancellation, without lawful consideration, of a note for that sum, signed by the four recipients of the gratuity, the inducement for the cancellation being the assent of the four recipients to the consolidation of two constituent banks in the formation of the Foreman-State National Bank.

The amended bill charged a systematic, deliberate and intentional concealment by the directors of the character of the transaction from the bank examiners, the internal revenue department and the shareholders; that appellant had only recently discovered its existence, and that thereby a cause of action accrued to the Foreman Bank against all the appellee directors, which cause of action constituted an asset of that bank.

The amended bill further charged that on June 8, 1931, the Foreman Bank, being insolvent, executed a contract with the First National Bank, by which it assigned all of its resources, including all claims against its directors, to the latter bank, which in turn assumed unconditionally all the indebtedness of the Foreman Bank, except certain sums aggregating $12,550,000, which it conditionally assumed, its liability being dependent upon the ultimate extent of the realization by the First National Bank upon the assets transferred. It was also alleged that the contract was made for the immediate and primary benefit of the Foreman Bank and its shareholders; that the assets constituted a fund charged with the indebtedness of that bank; that as to its creditors the liability of its shareholders was direct, immediate and primary; but as among the shareholders and both banks, such liability, under the contract, and by operation of statute, was secondary with respect to the assets. Hence it was alleged that the Foreman Bank, as a corporate entity, and its shareholders, as individuals liable for its debts, were entitled to exoneration from such liability; to a marshaling of assets, and to specific performance of the contract, for the purpose of liquidating the assets charged with the bank's debts. It was further averred that the First National Bank declines and refuses to enforce the cause of action, and that the right of the Foreman Bank and its shareholders to a liquidation of the assets is independent of any right of the First National Bank; that the appellee directors still constitute a majority of the incumbent directorate of the Foreman Bank, and that a demand upon it would be futile. The bill contained averments as to appellant's ownership, and prayed for the enforcement of the claim against the directors and the application of the proceeds of such enforcement to the costs of the collection and retirement of the indebtedness of the Foreman Bank, and other appropriate relief. It is to be observed that in the amended bill appellant also relies upon his alleged right

of exoneration, as pleaded in the original bill. Certain of his assigned errors are here predicated upon the court's dismissal of the original bill, but there was no appeal from that order and he did not elect to stand upon his exceptions to that ruling, indeed he saved no exceptions to it. However, as the same facts appear here, and as the question of joinder of inconsistent remedies seems not to have been presented to the lower court, we shall consider both theories and adopt the one that is valid, if either is.

The alleged facts upon which the amended bill is based are substantially as follows: From February 10, 1891, to December 14, 1929, the State Bank of Chicago, hereafter referred to as the State Bank, was a banking association organized under the laws of Illinois, and from November 1, 1929, to December 13, 1929, appellants Haughan, Head, Cox and Carlson, hereinafter referred to as the recipients, held respectively the offices of chairman of the board of directors, president, executive vice-president, and vice-president of that bank. Prior to and until June 8, 1931, Foreman National Bank was organized and operated in Illinois under the National Bank Act. For several months prior to December 14, 1929, the State Bank and the Foreman Bank considered the acquiring by the latter bank of the assets of the former. It was by them contemplated that the latter should change its name to Foreman-State National Bank; that it should issue 110,000 shares of stock of the par value of one hundred dollars each, and should distribute such shares to the holders of the stock of both banks in the ratio then agreed upon, in consideration of the surrender of the stock of both banks by the holders thereof. The plan further contemplated that the stockholders of the two banks who did not desire to exchange their stock for the new stock might exchange it for a price payable in cash; and that all of the appellee directors should be directors of the Foreman Bank after the execution of the plan.

A short time prior to December 13, 1929, Haughan, Head, Cox and Carlson proposed to the other appellees that they would become directors of the Foreman Bank upon the condition that $880,000 should be appropriated and paid to them from the funds of the State Bank, and that they should be permitted to purchase shares of the new stock, ostensibly at the prevailing price, but in fact paying such price from moneys to be appropriated and paid to them from such funds of the State Bank. It is alleged that this proposal was accepted by all the appellee directors, and was consummated in the following manner: The four recipients took from the funds of the State Bank the sum of $880,000 for which they executed their interest-bearing promissory note which is long past due. Thereupon the recipients caused debit and credit tickets to be prepared, directing the credit of the cash account and the debit of the notes receivable account with the amount of the note. Records of the transaction were entered in the daily blotter and the notes receivable record of the State Bank. At the time of this transaction the recipients designed that no part of such sum or interest thereon should be repaid, but they anticipated the transfer of the State Bank's assets to the Foreman Bank in the manner thereafter accomplished, and intended that after such transfer the Foreman Bank, at the instance of the recipients, should cause the note and accruing interest to be written off its books and not collected or realized upon, and that the entire sum should be lost to the State Bank and to its successors; and should be appropriated to their private use.

On December 13, 1929, the State Bank entered into a contract with the Haughan State Bank, whereby, for valuable considerations, the former transferred to the latter most of its assets including the note in question, and the following day the latter bank by a valid contract transferred to the Foreman Bank all of its resources, including the note in question. The latter bank changed its name to the Foreman-State National Bank, by which name it is here impleaded, and for convenience is here after referred to as the Foreman Bank.

On December 20, 1929, the appellee directors were members, and constituted a majority of the board of directors of the Foreman Bank. Haughan was vice-chairman of the board, Head was president, and Cox was its executive vice-president. On this day the recipients were solvent and financially able to pay the note, of which fact the individual appellees then had knowledge. Shortly thereafter the Foreman Bank, with the concurrence and approbation of its board, including the individual appellees, caused the note to be charged off its books in the following manner in order to conceal from appellant, and all others interested, the true nature of the transac-

tion. They credited the notes receivable account with $880,000, and entered a debit for the same amount in a contingent reserve account instead of entering it in the account where losses are usually and rightfully entered, intending thereby to prevent the shareholders from enforcing payment of the note, and to permit the recipients to divert and appropriate that amount to their own use without lawful consideration. These acts were ultra vires of the State Bank and Foreman Bank, and transcended the authority of their officers which resulted in the accrual of a claim in favor of the Foreman Bank against the individual appellees.

On June 8, 1931, the Foreman Bank, being unable to discharge its maturing debts, concluded an agreement with the First National Bank providing for the liquidation of the former's resources. Pursuant to that agreement certain Chicago banks provided a fund of $10,000,000 for the indemnification of the First National Bank, upon its assumption of the Foreman Bank's debts to its depositors, except certain indebtedness hereinafter mentioned. In further conformity with the latter agreement, divers persons, whose names were unknown to appellant, deposited in the Foreman Bank sums aggregating $2,550,000, for which that bank issued certificates of deposit providing that the holders should be entitled to receive, four years after June 8, 1931, the respective sums evidenced by the certificates. These were to be paid from the proceeds of the liquidation of the Foreman Bank's assets after the indemnification of the First National Bank for the indebtedness assumed by it, and after the reimbursement of the banks which furnished the ten million dollar fund. In further conformity to the agreement the Foreman Bank assumed corporate liability for the two funds aggregating $12,550,000, as a result of which appellant and all other shareholders of the Foreman Bank became liable for that sum with interest, to the extent of their super-added stock liability, by virtue of the provisions of the National Bank Act, 12 U.S.C.A. § 63 et seq. In compliance with the agreement, the Foreman Bank transferred to the First National Bank all of its assets, including the claim herein involved against its directors, whereupon the latter assumed all the debts of the former, except the indebtedness arising out of the two funds aggregating $12,550,000. By this agreement the assets transferred were constituted a fund from the proceeds of the liquidation of which the First National Bank was, first, to reimburse itself for the disbursements and liabilities entailed by its assumption of the debts of the Foreman Bank; second, from any surplus remaining, to reimburse the banks which advanced the $10,000,000; and third, from any overplus to pay the certificates of deposit above referred to. Hence appellant concludes that the direct, primary and paramount object of this agreement was to protect the shareholders of the Foreman Bank against the enforcement of their stock liability imposed by the National Bank Act; that the agreement was entered into for the direct benefit of the Foreman Bank, its creditors, and shareholders; that the Foreman Bank was entitled to require the liquidation of all the transferred assets, including the chose in action here involved, which is unpaid, and to require the application of the proceeds to the discharge of the transferor's indebtedness; and that the appellee directors are liable to the First National Bank, as successor to the Foreman Bank, for the amount of the note with interest.

It is further averred that the capital stock of the Foreman Bank, at all times referred to, consisted of 111,000 shares of the par value of one hundred dollars each, of which appellant is the holder of fifteen shares.

It is also averred, that by reason of the circumstances recited, there accrued to the Foreman Bank a primary right to the liquidation of its resources for application to its indebtedness, although the extent of such liquidation could not be presently estimated with exactness; that this right of the Foreman Bank was independent of any right of the First National Bank, and appellant and all other shareholders had the derivative right on behalf of the Foreman Bank to enforce that right; the indebtedness of the Foreman Bank on June 8, 1931, and presently unpaid was in excess of $28,060,000, and a liquidation of its assets would yield less than that amount, and the comptroller of the currency was threatening to levy and enforce an assessment upon the stock unless the assets when liquidated were sufficient to pay the debts, including the $12,550,000; that the resources of the Foreman Bank constituted a fund primarily liable for all of its debts; that appellant and all other shareholders on June 8, 1931, or within sixty days prior thereto, were

primarily liable to its creditors, and that between the shareholders of both banks with respect to the transferred assets the liability of appellant and those similarly situated was secondary; that appellant and those of his class have no adequate legal remedy, and are entitled to enforce collection of the claim and to require application of the proceeds thereof in diminution of the indebtedness by virtue of their right to exoneration.

It was averred that no demand had been made upon the Foreman Bank or its officers to enforce its rights under the facts alleged in the bill for the reason that such demand would be unavailing because appellant's right was independent of that of the Foreman Bank, and because the administration of its assets was within the exclusive control of its liquidating committee, a majority of the membership of which were liable financially under the pleaded facts; and because the individual appellees constituted a majority of its board of directors; that appellant has taken no steps to enforce the alleged rights by the shareholders of the Foreman Bank because it is in liquidation, they are numerous, widely scattered, and unknown to appellant, and they have relinquished the entire disposition of the estate to the liquidating committee, and are without legal right or effective means to enforce their alleged rights without the aid of a court of equity. No such demand has been made upon the First National Bank because the right of appellant and other shareholders is direct, immediate and primary, and ulterior to any right of that bank. It has failed to assert or enforce such claim, and a demand for it to do so would be futile.

It is further averred that appellees, having planned and carried out the contract of assignment as officers and directors of the Foreman Bank, are precluded in equity from asserting the assignment as a defense; that the Foreman Bank has no interest in the defeat of the bill, and the First National Bank has waived the effect of the assignment as a defense, by claiming, in its answer to the original bill, the avails of the recovery, if any. Appellant denies laches on his part and avers that the suit is not collusive for jurisdictional purposes.

The relief asked is that an accounting be had of the money due from the four appellees who abstracted the original sum; that appellee directors be adjudged to have committed a devastavit of the assets of the Foreman Bank by force of the adoption of the resolution treating the indebtedness as worthless, and their continued failure to collect it, and that they be decreed to pay such sum as shall be found due; that the proceeds of such collections be applied in the order named to the payment of court costs, expenses incurred in the institution and prosecution of the action, and to the satisfaction of the outstanding indebtedness of the Foreman Bank; and for all other relief which the facts may require.

To both the original and amended bills the First National Bank filed answers under Equity Rule 40, 28 U.S.C.A. following section 723, which provides in substance that defendants against whom no relief is prayed need not answer the bill at large unless the court otherwise order. The court made no such order. Both answers deny applicant's right to the relief sought and state that the bank was without knowledge relative to the alleged asset in question, and that it claims it, if any there is. The other appellees filed motions, respectively, to dismiss each bill, and each was dismissed by separate orders on different days.

There were two main issues presented in the District Court and decided adversely to appellant. The court held that the material allegations of the amended bill were not sufficient to entitle appellant to maintain a derivative suit on behalf of the Foreman Bank against the appellees. It further held that appellant because of his super-added liability as a stockholder of a national bank, was not entitled under the pleaded facts to invoke the doctrine of exoneration to enable him individually to enforce his alleged cause of action against the appellees. We think the questions were decided correctly.

It seems to be well settled that a derivative suit by a stockholder in a corporation will not lie unless it is based upon a cause of action which may be enforced by the corporation. In other words the rights asserted in a derivative suit must be such as may be asserted by the corporation. Federal Equity Rule 27, 28 U.S.C.A. following section 723. Here it is admitted and pleaded in the bill that the corporation assigned all of its assets, including the alleged cause of action herein involved to another bank, and it is urged by appellees that thereby the assignor parted with all title to, and all control and dominion over

the present suit. It is contended, however, by appellant that the right to sue on the claim in question was a non-negotiable chose in action, and notwithstanding its assignment the assignor may still sue under the common law rule. See Shaffer v. Federal Cement Company, D.C., 225 F. 893; Illinois Practice Act 1907, § 18, Smith-Hurd Stats.Ill. c. 110 Appendix, § 18; Illinois Civil Practice Act 1934, § 22, Smith-Hurd Stats.Ill. c. 110, § 146; Allis-Chalmers Mfg. Co. v. Chicago, 297 Ill. 444, 130 N. E. 736. The existence of the rule is not denied, nor is its applicability questioned in certain cases. However, appellees urge quite convincingly that the common law rule is not applicable to equity actions in the Federal courts because of Equity Rule 37, 28 U.S.C.A. following section 723, which provides that every action must be prosecuted in the name of the real party in interest, with certain exceptions not here material. That the assignee in this case is the real party in interest we think there can be no question. The bill admits insolvency, and it is not alleged by inference or otherwise that there is even a probability that solvency will ensue, or that the shareholders' super-added liability will be diminished in any degree. The rule recognizes the right of the assignee to sue also, if he so desires, and it does not permit the assignor to recover for his own personal benefit, but if he recovers at all it must be for the benefit of the assignee, where, as here there has been a complete assignment of the entire subject matter. Hence, we think that under Equity Rule 37, appellant can not maintain the alleged derivative action on behalf of the Foreman Bank, because by its assignment it has ceased to be the real party in interest. Doak v. Hamilton, 4 Cir., 15 F.2d 774; W. F. Pigg & Son, Inc. v. United States, 8 Cir., 81 F.2d 334.

■■ It is further contended by appellant that the First National Bank waived its exclusive right to maintain the action which appellant now seeks to prosecute, because of its answer to the bill wherein it claims the asset in case its existence is established. We think this can not be considered either as an admission of the validity of the claim, or as a waiver of that bank's right to enforce it. Moreover, if the assignment deprived the Foreman Bank of its right to sue, and we believe it did, nothing in the answer of the First National Bank could restore that right to the Foreman Bank. The assignment having been made for the benefit of the creditors, their consent to such restoration would be necessary to establish it. Bogert, Trusts and Trustees, Vol. 4, sec. 1001, p. 2924; Botzum v. Havana National Bank, 367 Ill. 539, 12 N. E.2d 203; Bay v. Williams, 112 Ill. 91, 1 N.E. 340, 54 Am.Rep. 209.

■■ Appellant also contends that the assignment is not available to the directors of the Foreman Bank because it is not a valid assignment until ratified by the latter's shareholders. He observes that the amended bill does not aver that the shareholders ratified the assignment. However, he states in his brief that the assignment was perfectly effective as to the First National Bank, which was not a party to any fraud, but it is not effective as a defense to the directors, and they can not interpose the shareholders' ratification of the assignment, because the directors induced the shareholders to approve the assignment of a claim against the directors to an assignee who did not undertake to collect it, of which claim the shareholders had no knowledge, because it was unlawfully concealed from them by the directors. In other words, appellant does not seek to set aside the assignment, but he relies upon it so far as the First National Bank is concerned and seeks to benefit by its promises to the extent of more than twelve million dollars, and yet he insists that the assignment cannot be used against him in so far as the directors are concerned. We think the position is inconsistent. If the shareholders' consent to the assignment was induced by fraud, the transaction at most was voidable, and if it was subsequently rendered void by a timely disaffirmance, the shareholders would be in no position to enforce any part of it. An assignment tainted with fraud may be ratified by those upon whom the fraud is perpetrated, and if this occurs, the result so far as the assignment is concerned is the same as if no fraud had been perpetrated. Such transaction can not be partially ratified and partially disaffirmed. Thus far there has been no disaffirmance. The assignment was the corporate act of the Foreman Bank, authorized by the directors and approved by its stockholders. It does not expressly or by implication purport to discharge the Foreman directors of any liability. Moreover, we are unable to perceive why the lack of knowledge by a stockholder of the existence of the alleged chose in action here involved was in any way material as an inducement to his approval of the Fore-

man Bank's assignment, sale and transfer of its assets to the First National Bank. Indeed, it seems that a knowledge of such fact would constitute an added inducement for the shareholders' assent. Under the circumstances disclosed we think it can not be urged, and it is not alleged, that the shareholders' lack of knowledge of the existence of the alleged chose in action in any manner induced the approval of the assignment. We think there is no merit in appellant's contention that appellees can not urge the legal effect of the assignment.

 In support of the court's ruling appellees urge that the amended bill does not disclose that appellant will be benefited in any way by the enforcement of the alleged cause of action. It seems to be well settled that a shareholder can not maintain an action to hold the directors of an insolvent corporation liable for fraud or mismanagement unless it appears that he will be benefited by the relief demanded. See Campbell v. Anniston Office Building Company, 5 Cir., 73 F.2d 789; Darragh v. H. Wetter Mfg. Co., 8 Cir., 78 F. 7; 20 R.C.L. on Parties, sec. 8. The amended bill alleges insolvency of the Foreman Bank. It avers a present undischarged indebtedness of $28,060,055, and total possible stock liability of $11,000,000. Unless the assets now held by the First National Bank, other than the alleged claim of $880,000 against the directors, are sufficient to discharge the liabilities to the extent of $16,180,055, appellant's liability on his stock can neither be extinguished nor diminished. So far as the bill discloses, a full recovery of appellant's demand would yet leave an excess of liabilities over assets, thus requiring enforcement of the total stock liability. This does not mean that appellant must predict the amount of his recovery or his benefit with exactness, but he is required to allege facts showing benefit to himself or those for whom he sues, if there is a recovery in any amount. Moreover, it does not appear that the comptroller has taken possession of the Foreman Bank's assets, or that he has appointed a receiver, or that he has found the bank to be insolvent, all of which must precede an assessment, and it is not alleged that a full recovery of appellant's claim would either result in no assessment or in a reduction of the stockholders' liability on his stock. Obviously, appellant showed no remedial interest in the subject matter. See Moss v. Goodhart, 47 Mont. 257, 131 P. 1071. We are convinced that the cases relied upon by appellant in opposition to this ruling are not inconsistent with our conclusions.

 The District Court was also of the opinion that the amended bill was fatally defective in not alleging a demand upon the First National Bank to institute and prosecute the suit. Appellant attempted to excuse such failure by the averment that the Foreman Bank was then under control of the liquidating committee, a majority of whose members were the defaulting directors. In sustaining the motion to dismiss the original bill, the court, in substance said that if there had been no transfer of assets to the First National Bank the averment might have been sufficient to entitle appellant to maintain the suit, but in view of the transfer the demand was necessary; that appellant's remedy existed, but that he had misconceived its nature and its proper manner of enforcement. We think the court correctly ruled that the demand was necessary. Buck v. Gimon, 201 Ala. 619, 79 So. 51; Planten v. National Nassau Bank, 174 App.Div. 254, 160 N.Y.S. 297.

The amended bill set forth no new facts in support of appellant's right to exoneration. The District Court in dismissing the original bill held that appellant's superadded stock liability did not entitle him to invoke this doctrine, because the liability of such shareholder was not that of a surety. Other defects of the bill were held to be the alleged transfer of such right of action to the First National Bank, and the deficient allegation of any threatened assessment by the comptroller.

 The nature of the remedy sought clearly indicates that the doctrine can only be invoked by sureties. See 5 Pomeroy's Equity Jurisprudence, (2nd Ed.) page 5180, sec. 2342; 21 Ruling Case Law on Principal and Surety, sec. 146. This view seems to be established without contradiction by a long line of authorities. It is equally well established that the super-added liability of a national bank stockholder is that of a principal and not of a surety. It is created by statute for the sole benefit of the bank's creditors. Though it is secondary to the liability of the bank, the relationship is that of a principal and not of a guarantor. The idea of guaranty or suretyship is precluded by the fact that the debt of the bank is incurred for the benefit of the shareholders exclusively and is thus the debt of the shareholders as principals.

See Hobart v. Johnson, C.C., 8 F. 493; Ames v. American National Bank, 163 Va. 1, 176 S.E. 204.

▇▇▇▇▇ Appellant concedes that his super-added liability is not one of suretyship, with respect to the creditors; but with respect to the assets of the bank he contends that his liability is secondary, hence he should be entitled to his remedy in exoneration. It must be borne in mind, however, that a surety is awarded exoneration in order that mischief and circuity of action may be avoided, but a national bank stockholder is not a surety and is not subrogated to the rights of the creditors upon payment of his stockholder's liability. He merely has the right to participate in the surplus assets, if any. Hence the instant suit would not avoid circuity of action, and there appears to be neither reason nor power for a court of equity to award him the status of a surety.

▇▇▇▇▇ Under the doctrine of exoneration the surety is only subrogated to the creditors' rights against the debtor, and even if appellant's stock liability were one of suretyship, there could be no subrogation here, because the creditors of the Foreman Bank have no remedy, other than derivatively, against its directors for official malfeasance. National Exchange Bank v. Peters, C.C., 44 F. 13; Union National Bank v. Hill, 148 Mo. 380, 49 S.W. 1012, 71 Am.St.Rep. 615; Allen v. Cochran, 160 La. 425, 107 So. 292, 50 A.L.R. 459. Moreover, a surety can not invoke the doctrine of exoneration unless his liability is imminent and absolute. See Central Trust Co. v. Louisville Trust Co., 6 Cir., 100 F. 545; Southwestern Surety Ins. Co. v. Wells, D.C., 217 F. 294; Cotting v. Otis Elevator Co., 214 Mass. 294, 101 N.E. 367; Ridgeway v. Potter, 114 Ill. 457, 3 N.E. 91, 55 Am.Rep. 875; Beaver v. Beaver, 23 Pa. 167; 5 Pomeroy's Equity Jurisprudence, (2nd Ed.) p. 5181, sec. 2342. Furthermore, the amended bill does not disclose that the enforcement of the alleged cause of action will exonerate appellant in any degree, whether the action be considered a derivative one or otherwise.

Other matters in support of the court's ruling have been presented which we consider it unnecessary to pass upon. From what we have said we are convinced that the court's ruling in dismissing the amended bill is correct.

Decree affirmed.